# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

PATRICK LEXIS,
    *Plaintiff*,

v.

STEPHEN FAUCHER *et al.*,
    *Defendants*.

No. 3:18-cv-00956 (JAM)

## ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Patrick Lexis is a sentenced prisoner in the custody of the Connecticut Department of Correction. He has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging in principal part that prison officials were deliberately indifferent to his serious medical needs. After initial review, I conclude that Lexis has failed to allege plausible grounds for relief. Accordingly, I will dismiss the complaint without prejudice pursuant to § 1915A(b).

### BACKGROUND

Lexis is currently incarcerated at the Corrigan-Radgowski Correctional Center (Corrigan-Radgowski). Doc. #18. His complaint names the following ten defendants: Warden Stephen Faucher; Lieutenant Conger; Correctional Officers Nemeth, Milton, Sheffield, and Parade; and Nurses Laura, Frasier, Sarah, and Larisa Anisimov. Docs. #1 and #19.

The following allegations are accepted as true solely for the purposes of the Court's initial review. On February 12, 2018, Lexis was confined in the restrictive housing unit (RHU) at Corrigan-Radgowski. *See* Doc. #1 at 6 (¶ 1). That morning, defendant Nemeth released Lexis from his cell to take a shower. *Ibid.* (¶ 2). When Lexis entered the shower area, he noticed that there were no lights, privacy curtains, or rubber mats on the floors in or around the shower stalls. *Ibid.* (¶ 3). Lexis asked Nemeth why there were no lights or curtains in the showers. *Id.* at 7 (¶ 5).

1

Nemeth told Lexis that he had informed the Warden multiple times about the lack of curtains and lighting. *Ibid.*

Lexis entered the shower wearing shower shoes that were falling apart. *Id.* at 6 (¶ 3). He dropped the soap several times because it was difficult to "place [his] soap in the soap dish" due to the lack of light in the shower. *Id.* at 7 (¶ 7). He was able to wash his body and face. *Ibid.* After Lexis had finished showering, Nemeth handcuffed his wrists and opened the gate to permit him to exit the shower. *Ibid.* (¶ 9). When Lexis attempted to step out of the shower shoes and into his "blue shoes," he slipped and fell on his back. *Ibid.* (¶ 10). He injured his back and ankle. *Ibid.* Nemeth grabbed his left arm to pull him up, but Lexis complained that he was in pain and asked Nemeth to call a nurse. *Id.* at 8 (¶¶ 11-12). In response to a medical code called by Nemeth, Nurses Laura and Frasier arrived in the shower area. *Ibid. (*¶ 13). Laura "was rude and sarcastic" toward Lexis and asked whether he "needed a wheelchair." *Ibid.* She was distracted by comments made by occupants of surrounding cells even as Lexis indicated that he was experiencing back and ankle pain. *Ibid.*

Lexis's left leg began to shake uncontrollably. *Ibid.* (¶ 16). Frasier touched Lexis's toes, and Lexis indicated that his toes hurt. *Ibid.* His back and ankle hurt when he tried to move. *Ibid.* (¶ 17). Frasier brought a stretcher to be used to transfer Lexis to the medical department. *Id.* at 9 (¶ 19). Officer Milton attempted to lift Lexis onto the stretcher, but Lexis stated that he wanted the nurses to lift him. *Ibid.* After the nurses placed him on the stretcher, he began to scream because of substantial pain in his back. *Ibid.* (¶ 20).

When Lexis arrived at the medical unit, Nurse Anisimov indicated that she would be giving him an injection to treat his symptoms. *Ibid.* (¶ 21). Officers Sheffield and Doe held Lexis down while Anisimov injected "Teranol" into his left arm. *Ibid.* (¶ 22). He also received a

medication called "Flexoral" to treat his painful back spasms. *Ibid.* (¶ 23). He fell asleep and did not wake up until 3:30 p.m. *Ibid.*

When Sheffield toured the medical unit that afternoon, Lexis stated that he had not received lunch. *Ibid.* (¶ 24). Sheffield indicated that dinner would be served in an hour and that he would inform the next shift officer that Lexis wanted dinner. *Ibid.* (¶ 25).

At 4:00 p.m., Lexis asked Frasier if he could call his mother and whether an officer could take photographs of the injury to his back. *Ibid.* (¶ 26). Frasier shook her head no and left the medical unit. *Ibid.* (¶ 27).

At dinnertime, Sarah checked Lexis's back, took his vital signs and provided him with a container to urinate in. *Id.* at 10 (¶ 28). In examining Lexis, she observed a scrape on the left side of his back. *Ibid.* (¶ 29). Lexis indicated that he felt a burning sensation in that area. *Id.* Sarah refused to photograph the scrape and left the medical unit. *Ibid.* (¶ 30).

On February 13, 2018, Parade refused to provide Lexis with breakfast. *Ibid.* (¶ 31). She stated that there was no documentation indicating that he could not walk. *Ibid.* Later that day, a medical supervisor cleared Lexis to return to the RHU, provided him with a bottom bunk pass for thirty days, and renewed the prescription for Flexoral to treat his painful back spasms. *Ibid.* (¶ 32). A week later, even though Lexis continued to complain about his back, a medical provider discontinued the prescription for Flexoral. *Ibid.* (¶ 33).

Lexis has lost sleep every night since his accident and has experienced numbness, tingling, pain, high blood pressure, stress, and depression. *Id.* at 10 (¶¶ 34-35). He has undergone two x-rays since the accident and has been taking Motrin to treat his pain symptoms. *Ibid.* (¶ 34). He seeks money damages and does not request injunctive relief. *Id.* at 7.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a prisoner's *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).[1]

Moreover, because the Court's obligation to conduct an initial review requires consideration of whether any defendant may be immune from relief, *see* 28 U.S.C. § 1915A(b)(2), the Court may appropriately consider qualified immunity at the initial review stage. *See Story v. Foote*, 782 F.3d 968, 969-70 (8th Cir. 2015). Accordingly, as to any claim for money damages against a prison official in the official's individual capacity, the Court must

---

[1] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

consider whether the complaint alleges facts to show a violation of clearly established law such that any objectively reasonable prison official would have known that he was violating the plaintiff's constitutional rights. *See, e.g., Mara v. Rilling*, 921 F.3d 48, 68-69 (2d Cir. 2019).

### *Official capacity claims*

As a threshold matter, I will dismiss Lexis's official-capacity claims for money damages, because "[n]either a State nor its officials acting in their official capacities are 'persons' under 42 U.S.C. § 1983.'" *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Lexis does not seek prospective injunctive relief that might otherwise allow him to maintain a suit against the State or any of the individual defendants in their official capacity. *See ibid.* That leaves only Lexis's individual-capacity claims against the ten defendants for money damages.

### *Deliberate indifference to safety and serious medical needs*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate indifference claim has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. Second, the prisoner must allege that a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind reflecting actual awareness of a substantial risk that serious harm to the prisoner would result. *See, e.g., Spavone v. N.Y. State*

*Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).

Lexis alleges that Faucher and Conger were deliberately indifferent to his safety because they did not act to repair the shower in which Lexis was injured. Doc. #1 at 11 (¶¶ 40-41). He also alleges that Nemeth and Milton showed deliberate indifference to a risk of harming him when Nemeth attempted to raise Lexis to a standing position after his fall coming out of the shower and Milton attempted to lift him onto a stretcher without assistance. *Id.* at 8, 9 (¶¶ 12, 19). He also alleges that Sheffield and Parade were deliberately indifferent when they failed to provide him with two meals. *Id.* at 9-10 (¶¶ 24-25, 31).

I conclude that none of these alleged actions are sufficiently serious to support a claim for a violation of the Eighth Amendment. Even if the facts alleged are true, it cannot be said that any objectively reasonable prison official would have known that the alleged actions amounted to a violation of Lexis's right to be free from cruel and unusual punishment. *See, e.g.*, *Green v. Maldonado*, 2017 WL 3568662, at *3 n.1 (D. Conn. 2017) ("[T]he slippery conditions of the shower, i.e. the standing water or slippery surface, alone would not give rise to an Eighth Amendment claim."); *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 112-114 (E.D.N.Y. 2011) (same); *Foster v. Redenius*, 2009 WL 1212888, at *6 (E.D. Cal.) (periodic deprivation of meals not sufficiently serious absent evidence of effect on health), *report and recommendation adopted*, 2009 WL 7327153 (E.D. Cal. 2009), *aff'd sub nom. Foster v. Noyce*, 420 F. App'x 720 (9th Cir. 2011).

As to the nurse defendants, Lexis further alleges that Laura was deliberately indifferent to his serious medical needs when she arrived to assist him after he slipped near the shower and repeatedly said to him, "I know I'm not the one who fell – you did." Doc. #1 at 8 (¶¶ 13-18). He

6

further claims that Anisimov showed deliberate indifference in her conduct toward him when she administered Teranol by injection. *Id.* at 9 (¶ 22). He claims that Frasier and Sarah failed to document his injuries by taking photographs of the injuries on his back. *Id.* at 9-10 (¶¶ 26-30). He alleges generally that he "struggled" to receive adequate pain medication, and that the Motrin he received has not worked to alleviate the pain caused by his fall. *Id.* at 10 (¶ 34). All these allegations against the nurse defendants sound at best in the nature of medical negligence rather than subjective reckless disregard for serious medical needs. Moreover, taking these allegations as true, I cannot conclude that any objectively reasonable prison nurse would have believed that these actions violated clearly established law and rose to the level of violating Lexis's constitutional right to be free from cruel and unusual punishment.

## CONCLUSION

For the foregoing reasons, the Court DISMISSES the complaint pursuant to 28 U.S.C. § 1915A. The Clerk of Court shall close this case. If Lexis believes there are additional facts that would establish plausible grounds for relief, then he may file by **July 1, 2019**, an amended complaint that alleges such facts, and the Court will then re-open this case to conduct another initial review of the proposed amended complaint pursuant to 28 U.S.C. § 1915A.

It is so ordered.

Dated at New Haven this 3d day of June 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge